# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 10, 2012

## STATE OF TENNESSEE  v. NORMAN D. CARRICK

**Appeal from the Criminal Court for Shelby County**
**No. 04-01994     Paula L. Skahan, Judge**

**No. W2010-01415-CCA-R3-CD - Filed November 27, 2012**

Defendant was placed on supervised probation in 2007 with the special condition that he not be involved in dog fighting or have more than two dogs in his home.  The defendant's probation was revoked and he was sentenced to another three years probation on the grounds that nine dogs were found in his home.  Defendant appeals, claiming that the special condition placed on his probation was not reasonably related to his conviction and that the judge did not articulate sufficient grounds to place an additional special provision on his newly-imposed probation that he not be permitted to possess any dogs.  We conclude that the special conditions affecting the defendant's dog ownership are reasonably related to the purposes of his sentences and are not unduly restrictive or otherwise impermissible.  The judgment of the trial court is affirmed accordingly.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, J.J., joined.

Linda L. Garner, Memphis, Tennessee, for the appellant, Norman D. Carrick.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Betsy Carnesdale, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On September 18, 2003, the defendant was indicted on two counts of possession of marijuana with intent to distribute in violation of Tennessee Code Annotated section 39-17-

417, one count of possessing dogs for purposes of fighting in violation of Tennessee Code Annotated section 39-14-203, and two counts of cruelty to animals in violation of Tennessee Code Annotated section 39-14-202. Pursuant to a plea agreement, on September 26, 2007, the defendant pled guilty to one count of possession of marijuana with intent to distribute, a Class E felony, and was sentenced to three years supervised probation. The remaining counts were dismissed.

A special condition was placed on the defendant's supervised probation, stating: "Defendant cannot own or possess or have more than two (2) dogs at any time in his home or where he resides and may not in any way be involved in dog fighting . . . ." On May 20, 2010, in response to a complaint lodged by an animal shelter, a Memphis police officer and the defendant's probation officer searched the defendant's home and found him to be in possession of nine dogs – eight pit bull types and one rottweiler. All of these dogs were chained on four-foot chains, one of which was an enhanced grade of chain normally used to tow cars. The defendant was arrested for violating the special condition of his probation.

On May 26, 2010, the trial court held a probation revocation hearing. The State's first witness was Ms. Chocile Harris, a probation supervisor with the Tennessee Board of Probation and Parole. Ms. Harris testified that she supervised the defendant's probation in conjunction with his 2007 conviction for possession of a controlled substance with intent to distribute. She testified that the defendant started his probation on September 26, 2007. She further testified that the defendant was not employed and was receiving Social Security disability. She testified that the defendant was generally in compliance with the conditions of his probation until his recent arrest.

The State's next witness was Ms. Carolyn Lynch, an animal control officer with the Memphis Animal Shelter. Ms. Lynch testified that she was familiar with the defendant from his earlier arrest. Ms. Lynch also testified that she was present when the defendant's home was searched on May 20, 2010. She testified that this search was initiated after she was informed by a county code enforcement officer that the defendant had nine dogs in his possession. Ms. Lewis testified that she was aware that this was a violation of the terms of the defendant's probation due to her involvement in the defendant's case in 2004. She testified that after she received this information, she contacted an officer with the Shelby County Sheriff's Office and accompanied officers from that department during the ensuing search.

Ms. Lynch testified that when they arrived at the defendant's residence, they discovered nine dogs in the defendant's backyard. All nine dogs – eight pit bulls and one rottweiler – were being kept on heavy, short chains. She testified that all the dogs had "green" water, which indicated to her that no one had changed it recently. She testified that

the dogs had only some old barrels for shelter, and one of them was being kept on a chain so short that he could not even reach his barrel.

Ms. Lynch testified that all of the dogs were "really strong" and were "built up." She testified that one of the male pit bulls had scabs on his face. She testified that in her experience, scarring around a dog's face is indicative of dogfighting. Ms. Lynch testified that the defendant had no explanation for why he possessed the dogs or why they were living in such conditions. Ms. Lynch testified that following their search they confiscated the animals and cited the defendant for not having the animals properly vaccinated.

Ms. Lynch also testified that during the time that he was being investigated in 2004, the defendant had threatened her supervisor. More specifically, she testified that her supervisor had informed her that the defendant had "said they were going to find her body in the river" during that investigation – which her supervisor had taken as a threat.

On cross-examination, Ms. Lynch clarified that all of the dogs were being held in unkept surroundings. Describing the defendant's backyard, the witness stated: "It really stunk there" and "[t]he urine and the poop odor was pretty bad and it was muddy." Ms. Lynch explained that she could not think of any reason for a dog to have scars on its face unless it had been involved in dogfighting and clarified that she only found scarring on one of the dog's faces. Ms. Lynch further testified that none of the dogs that they removed from the defendant's home were "puppies;" each was well over one year old.

Ms. Lynch testified that the defendant did not have a kennel license. She testified that in order to obtain a kennel license, an individual has to build concrete kennels and hook them up to city water and sewage. She testified that the defendant's dogs were sufficiently muscular to cause her to suspect that he intended to engage them in dogfighting, but there was insufficient evidence to charge him with that crime.

Officer Brandon Champagne of the Memphis Police Department's organized crime unit testified that he was involved with the defendant's recent arrest. He identified the defendant in open court. He testified that he went to the defendant's residence on May 20, 2010, because he had received complaints from the animal shelter. He further testified that the shelter had informed him that it was too "scared to send officers out there, because of the propensity of violence and threats that were made against animal control officers."

Officer Champagne testified that prior to going to the defendant's house, he did some research on the defendant and determined that he was a member of the Gangster Disciples and was at one time the "governor of North Memphis" – meaning that "he ran the North Memphis area." He testified that he arrived at the defendant's house around 5:30 p.m., and

the defendant was standing in the driveway when he approached. He testified that when he explained the purpose of his visit to the defendant, the defendant was "a little bit edgy, at first," and initially gave him a bit of an attitude. The witness further testified, however, that once the defendant was shown a copy of the probation order that he had signed stating that he was subject to search by law enforcement at any time, the defendant calmed down and was cooperative.

Officer Champagne testified that he discovered eight pit bulls and one rottweiler at the defendant's residence. He testified that all of these animals were chained at different locations in the backyard. The witness was then shown several photographs of the property and animals, which were authenticated and entered into evidence. The witness pointed out from the photographs the various chains used to leash the dogs and some "green slime" in the dogs' drinking water. The officer also pointed out lye and feces scattered about on the ground.

Officer Champagne testified that when he searched the defendant's house, he discovered a notepad on the island in the kitchen. On that pad was a schedule for running the dogs on treadmills and feeding them, as well as recipes for their food that included notations concerning "cc's of blood." The witness testified that there was a gang sign – a "Gangster's Disciple star" – on the pad. There was also a notation on the pad stating "cut dog food to fluctuate weight." The witness testified that this notation was indicative of dogfighting, because those promoting the sport would try to keep their dogs thin before a fight in order to ensure sufficiently aggressive behavior. There was also a notation on the pad referencing "strapping" ten pound weights to a "double-wide collar." The witness testified that individuals engaging in dogfighting "use weights to keep the dog strong and to keep it running and it is taped to the collar and they put them on a treadmill to keep their stamina up." Officer Champagne testified that he asked the defendant about the notepad during the search, but the defendant gave him no response.

On cross-examination, Officer Champagne clarified that he found the notepad sitting on the kitchen island in plain view. He testified that he did not find a treadmill during the search of the defendant's home. Following this testimony, the State rested.

The defendant's wife, Ms. Tamara Carrick, testified that she owned six of the nine dogs at issue. She testified "[t]he Rottweiler is my dog, personally. The puppies are mine." Ms. Carrick testified that five of the pit bulls were puppies, and "[t]he puppies are what I give to my kids." She testified that two of the adult pit bulls, "the mother and the father," belonged to the defendant. She testified that the remaining dog was "recently given to us to do some obedience training."

-4-

The defendant's wife testified that on April 20, 2010, "code enforcement" came to their house claiming that the two were "running an auto repair in a residential zone" and responding to complaints about their dogs. The witness testified that "code enforcement" told them that they could not have more than five dogs in a residential zone in the State of Tennessee, but she later looked that up and determined that it was not true. The witness testified that on May 7, 2010, she and the defendant purchased a license to start getting a kennel. The witness testified that "the lady" looked at their dogs, the dogs' water, and the dogs' living area, and told them that "all of the dogs looked fine, except we needed to get lighter chains." The witness testified that the dogs were on heavy chains because two of the females were in heat, and if the male dogs had gotten loose, "[y]'all would have said that we fighting the dogs." The witness testified that lighter chains did not hold the dogs safely, and the dogs would break loose.

Ms. Carrick testified that the dogs received ample exercise, and she claimed that they did not fight the dogs. The witness testified that the unsanitary conditions in the backyard were the result of recent rain combined with the fact that the dogs had recently been fed and had just used the bathroom. She testified that they did not clean up after the dogs during rain, and instead they used lime to "keep the scent down."

Ms. Carrick testified that it was her understanding that the defendant had been placed on federal probation with the condition that he not own more than two dogs. She testified that it was her understanding that a federal court had modified the defendant's probation by taking this limitation off of the defendant's supervised release. She testified that after this occurred, she bred the male and the female pit bulls, thereby creating the "puppies." She testified that she had only learned that she was not permitted to do this the week before the hearing. She testified that while none of the dogs had been vaccinated, they had been in the process of getting this done.

On cross-examination, Ms. Carrick acknowledged that she was the defendant's co-defendant on the matter for which he had been placed on probation. She testified that she recalled a date on September of 2003 when members of the Shelby County Sheriff's Department executed a search warrant for the home that she shared with the defendant. The witness testified that she remembered advising law enforcement officials that she knew about the narcotics that were discovered in the defendant's closet. She testified that she also remembered that nine pit bulls had been discovered on their property at that time, all of which had scars on their head and face that appeared to have been caused by fighting. She testified that she remembered telling law enforcement that three of those pit bulls were hers and that the other six belong to the defendant.

Next, the defendant testified that he was aware that there was a condition on his state

probation that he not own more than two dogs. He testified that he had recently gone to federal court and had a similar provision removed from his federal probation. He testified that, when he first pled guilty in state court, his attorney advised him "that the only reason that they were giving me a dog limit over here was because the feds had done it first." He testified that his attorney advised him that if he went back to federal court and had that provision modified, he would no longer "have to worry about it," because he had never been convicted of any crime concerning animals. He testified that, as a consequence, he was not aware that he was violating a condition of his state probation when he exercised control over more than two dogs. He further testified that if he had understood that he was doing so, he would have gone back to state court to have that provision removed.

The defendant testified that with the exception of owning more than two dogs, he had satisfied all of the conditions of his probation. He further testified that he had only three months left on his probation, and he no longer had to satisfy any drug screen or reporting requirements.

The defendant testified that he was not cruel to his animals and he "love[d] each and every last one of [them]." He testified that he fed and watered his dogs appropriately. He testified that the dogs' poor living conditions were due to the fact that it had recently rained and he had just finished mowing the area. He testified that the notepad that was discovered during the recent search of his house was from "all the way back from 2004."

The defendant testified that he was presently on disability for paranoid schizophrenia, although he occasionally performed automobile repairs. He concluded his testimony by pleading with the trial court to modify the conditions of his probation to allow him to possess dogs. He testified that he was in the process of getting a business license with the city, and he stated: "I am quite sure that a dog fighter would have a lot to hide and you know, wouldn't be willing to open himself up to [code enforcement] searches and you know, administrative searches." On cross-examination, the defendant acknowledged that he was first charged with animal cruelty in 1996.

After receiving this evidence, the trial court revoked the defendant's probation and imposed a new three-year sentence of probation, effective immediately. The trial court placed a special condition on the defendant's newly-imposed probation that the defendant "not own any dogs at [his] residence . . . or wherever he resides." A timely notice of appeal was filed. Satisfied the matter is properly before us, our decision follows.

## ANALYSIS

The defendant claims that the special condition imposed on his original sentence of

-6-

probation is void because it was not reasonably related to the offense for which he was convicted. The defendant also claims that the trial court failed to articulate sufficient grounds for imposing a new three year sentence of probation and for placing a special condition on that probation that he not possess any dogs wherever he resides. For the reasons that follow, we affirm the judgment of the trial court.

**I.**

The defendant claims that the special condition imposed on his original term of probation was void because it bore no reasonable relation to the offense to which he actually pled guilty – possession of marijuana with intent to distribute. However, there is no requirement that special conditions imposed on a defendant's probation relate to the specific crime to which the offender pled guilty. Rather, they must reasonably relate to the purpose of the defendant's sentence and not be unduly restrictive. *See generally* T.C.A. § 40-35-303 (d)(9) (2007) (Courts may require offender to "[s]atisfy any other conditions reasonably related to the purpose of the offender's sentence and not unduly restrictive of the offender's liberty or incompatible with the offender's freedom of conscience. . . ."). The defendant has not established that the special condition at issue was clearly unrelated to the rehabilitative purpose of his sentence. Consequently, his claim is denied.

Defendants' sentences are now reviewed under an abuse of discretion standard. *State v. Susan Renee Bise*, No. E2011-00005-SC-R11-CD, 2012 Tenn. LEXIS 645, at *73 (Tenn. Sept. 26, 2012). Courts afford "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* Consequently, even should this court discover an error with respect to a trial court's application of an enhancement factor or similar mistake, this court must uphold the sentence so long as "it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at *80. The burden is on the appealing party to demonstrate that the sentence imposed – including any probationary conditions – is improper. *State v. Burdin*, 924 S.W.2d 82, 84 (Tenn. 1996).

Trial courts "ha[ve] great latitude in formulating punishment, including the imposition of conditions on probation." *Id.* at 85. However, "[o]nce the trial judge determines that probation is justified under the circumstances, the conditions imposed must be reasonable and realistic and must not be so stringent as to be harsh, oppressive or palpably unjust." *Stiller v. State*, 516 S.W.2d 617, 620 (Tenn. 1974). The defendant's special condition limiting his possession of dogs does not violate any of these requirements.

The defendant's criminal history includes a conviction for dogfighting in 1996.

-7-

Although the one specific offense to which he pled guilty in 2007 involved only drugs, a review of the record and the facts surrounding his arrest for that crime make clear that the defendant continued to have serious issues with respect to his treatment of animals at that time. Confronted with this record, it was reasonable for the trial court to conclude that these issues should be acknowledged as part of an overall comprehensive approach toward encouraging the defendant to become a productive member of society. The prohibition placed on the defendant's possession of more than two dogs during the tenure of his probation was reasonably related to at least the rehabilitative purpose of the defendant's sentence, if not also to general deterrence purposes.

The defendant relies extensively on this court's decision in *State v. Jeremy Stephen Parks*, No. E2009-01984-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 124, at **39-40 (Tenn. Crim. App. Feb. 23, 2011), in arguing that his special condition was impermissibly imposed, but for the reasons we have just discussed his condition is not akin to a special condition that was struck down by this court in that case. In *Parks*, this court concluded that ordering a defendant to undergo an additional psychosexual evaluation as a condition of his probation after he had already undergone one such evaluation served no rehabilitative purpose, because there had been no showing that the first evaluation had been deficient in any way. We also note that the additional psychosexual evaluation ordered by the court in that case required the use of a "penile plethysmograph," an extremely invasive procedure whose scientific and rehabilitative value was not substantiated on the record existing in that case.

In the case at bar, the special condition imposed by the trial court was neither entirely redundant nor of yet-to-be-proven scientific merit. The record fully establishes that the defendant's relationship with animals has interfered with his ability to successfully contribute to and integrate into society. Nor has there been any showing that the condition at issue, which still permitted the defendant to possess up to two dogs, was unduly onerous. The defendant's claim that the special condition placed on his probation back in 2007 is void is denied.

## II.

The defendant also claims that the trial court erred by failing to articulate sufficient grounds on the record to justify imposing the requirement that the defendant own no dogs during his newly-imposed three year probationary term. However, even if this court agreed, under *Bise* this court would nonetheless have to affirm the sentence imposed by the trial court unless the trial court's decision so far departed from the principles and purposes of the Sentencing Act as to constitute an abuse of discretion. *See Bise*, 2012 Tenn. LEXIS 645, at *73, *80. To the contrary, the condition that the defendant own no dogs for the duration of

his probation is fully consistent with the principles and purposes of sentencing. The record reflects that the defendant's treatment of and interaction with dogs pose a continuing barrier to his rehabilitation, and forbidding him from possessing any dogs is a reasonable means of attempting to further his integration into society.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE